In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2004

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEITH D. JORDAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:98-cr-30095-SEM — **Sue E. Myerscough**, *Judge.*

SUBMITTED AUGUST 21, 2014* — DECIDED SEPTEMBER 3, 2014

Before FLAUM and HAMILTON, *Circuit Judges*, and
KAPALA, *District Judge.***

---

* After an examination of the briefs and the record, and pursuant to the
parties' motion to waive oral argument and expedite the appeal, we have
concluded that oral argument is unnecessary. The appeal is submitted on
the briefs and the record. See Fed. R. App. P. 34(a)(2).

** The Honorable Frederick J. Kapala of the Northern District of Illinois,
sitting by designation.

HAMILTON, *Circuit Judge*. Defendant Keith D. Jordan filed this successive appeal after we remanded his case for a new supervised release revocation hearing. See *United States v. Jordan*, 742 F.3d 276 (7th Cir. 2014) (*Jordan I*). In the first hearing, the key substantive evidence against Jordan was a written police report prepared by the Texas State Trooper who arrested Jordan in Texas after a traffic stop. His report said that Jordan had been driving a car containing nearly 30 pounds of marijuana, supporting a Grade A supervised release violation for a controlled substance offense. See U.S.S.G. § 7B1.1(a)(1). The trooper did not testify at that first hearing. The court admitted the hearsay report over Jordan's objection and relied upon it to find a violation and to return Jordan to prison. We held there was a reversible error because the court had admitted the report without making a finding about the interest of justice under Federal Rule of Criminal Procedure 32.1(b)(2)(C) that could have excused the failure to allow the defendant to cross-examine the trooper.

In the hearing upon remand, Trooper Wilson, the officer who arrested Jordan and wrote the report, testified via two-way video conference, as we had suggested in our opinion might be used to "allow a distant witness to testify and face cross-examination with minimal inconvenience and expense." See 742 F.3d at 279. He confirmed the events described in the police report that was at issue in *Jordan I*. He also testified that the leafy green substance found in the car that Jordan and his collaborator were driving was in fact marijuana. Trooper Wilson explained that he had participated in many marijuana busts before and was familiar with the plant and its characteristics. He also provided an estimate of the quantity of marijuana he found in the car.

In addition to Trooper Wilson's oral testimony, the government introduced a forensic laboratory report confirming that the leafy green substance found in Jordan's car was in fact marijuana. Trooper Wilson testified that the forensic report was the same one that the forensic lab had provided to him at the time. The district court allowed the introduction of the report over Jordan's objection, saying that such reports are generally considered reliable. Based on this evidence, the district court imposed the original sentence of 24 months in prison (with credit for time served) and no additional supervised release. That sentence was within the guideline range for a Grade A supervised release violation of 18 to 24 months for someone with Jordan's criminal history.

Jordan raises two challenges to this revocation hearing on appeal. First, he argues that allowing Trooper Wilson to testify by video conference violated Federal Rule of Criminal Procedure 32.1(b)(2), citing our decision in *United States v. Thompson*, 599 F.3d 595 (7th Cir. 2010). In *Thompson*, we held that Rule 32.1(b)(2) was violated when the presiding *judge* appeared at the revocation hearing by video conference. However, *Thompson* addressed Rule 32.1's appearance requirement only as it applies to parties and the presiding judge, not to witnesses.

To be sure, *Thompson* stated broadly "that the use of [video conferencing] is the exception to the rule, not the default rule itself." 599 F.3d at 601. In this way, *Thompson* explained that in some contexts and for some hearing participants, video conferencing is authorized only where there are "specifically enumerated exception[s]" permitting its use. See *id.* at 600–01. We extended this default rule to the defendant's "opportunity to appear" before the court under Rule

32.1(b)(2)(C) because that requirement was analogous to other contexts requiring the defendant's physical presence. See *id.*, citing Fed. R. Crim. P. 5(f) and 10(c). Accord, Fed. R. Crim. P. 43(a) (making clear that "[u]nless [Rule 43], Rule 5, or Rule 10 provides otherwise, the defendant must be present"). The lack of such an exception in Rule 32.1(b)(2) thus indicated that neither the defendant nor the judge could appear by video conference during a revocation hearing. *Thompson*, 599 F.3d at 601.

There is no similar default rule for witnesses in supervised release revocation hearings. In fact, Rule 32.1(b)(2)(C) expressly allows the court to excuse a witness's appearance altogether, whether physical or virtual, in the interests of justice, despite the otherwise strong preference for live, in-person testimony. *Thompson* therefore does not conflict with the interest-of-justice provision or extend to require an in-person appearance of all witnesses in revocation hearings. The district court in this case did exactly what we suggested in *Jordan I* when it allowed Wilson to testify via video conference. The court committed no error in doing so. The video conference option is permissible for witnesses under Rule 32.1(b)(2) and worked well in this case, as the district court noted on the record.

We are concerned about one related point, however. In discussing whether to allow Trooper Wilson to appear by video conference, the district court commented that it could not "imagine that the 7th Circuit expects that in these rural communities, or even in these busy, large cities, that in every one of these revocation cases there has to be a hearing with the officer present whether by video or otherwise." Tr. 17. We recognize that similar issues about whether to require

witnesses, especially law enforcement officers, to appear to prove disputed violations of supervised release conditions may arise often.

Lest there be any misunderstanding, we expect that as district courts evaluate the interest of justice under Rule 32.1(b)(2)(C), contested revocations of supervised release will ordinarily justify substantial efforts to provide the defendant with the opportunity to confront an accuser whose testimony is being relied upon to return him to prison. The defendant is not entitled to all of the protections of a criminal trial, but the stakes may be months or even years in prison. A court considering the interest of justice cannot lose sight of those stakes, even if letting the defendant confront the witness will require some effort or inconvenience for the prosecution or the court.

Jordan's second argument on appeal is that allowing the introduction of the laboratory report without explicitly making a finding about the interest of justice under Rule 32.1 was a reversible error, just as the admission of the police report had been an error in *Jordan I*. Defense counsel's failure to raise the objection explicitly in terms of Rule 32.1(b)(2)(C) or the need for such a finding (counsel made a vague objection only to lack of "foundation") could easily explain the absence of such a finding. See Tr. 46.

Even if there were an error, which we do not decide, it would have been harmless. Trooper Wilson testified that the leafy substance found in the car Jordan had been driving was nearly 30 pounds of marijuana. That testimony was based on his personal knowledge and experience in law enforcement. His testimony on those points was not contradicted or otherwise impeached. The quantity was obviously

a distribution quantity, and the lab report was not necessary to establish either the identity or the quantity of the marijuana in Jordan's possession. See *United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004) (evidence was sufficient to support conviction for distribution of marijuana without laboratory findings). There simply was no conflicting evidence to weigh against the court's finding, by a preponderance of the evidence, that Jordan had committed a Grade A violation of the terms of supervised release by possessing marijuana with intent to distribute.

The judgment of the district court is AFFIRMED.